## John L. Peterson

290:31 LRA 5

v.

## The Brabrook Tailoring Company et al.

*Filed at Ottawa May 8, 1894.*

1. VOLUNTARY ASSIGNMENT—*what constitutes.* A transfer of property,. to be treated as a voluntary assignment under the statute, must be a conveyance to an assignee in trust for the creditors. A transfer of property by an insolvent directly to his creditor, for the purpose of securing or providing the means for the payment of that creditor, only, is not a voluntary assignment.

2. SAME—*whether effected by giving judgment notes.* The giving of judgment notes by an insolvent corporation, due on demand, to three of its creditors, followed by the entry of judgments thereon and the levy of executions on all the tangible property of the corporation, will not, of itself, constitute a voluntary assignment, nor is it, in any proper sense, a diversion or misappropriation of a trust fund.

3. INSOLVENT CORPORATION—*preferring creditors.* The mere fact that a corporation may be insolvent does not so far charge its directors and officers with the character and functions of trustees as to take from them the power to make preferential transfers of the corporate assets, so long as they act in good faith, and do not attempt to prefer themselves.

4. SAME—*misapplying funds—effect on innocent creditors.* A corporation being unable to meet its obligations, procured a loan of $5000 from certain of its creditors to enable it to continue business, and gave them its judgment notes for their debts and such loan, which notes were payable on demand. The creditors, becoming fearful of trouble with other creditors, caused judgments to be entered on their notes,. and took out executions, which were levied on all the tangible property of the corporation. The $5000 loan was afterward paid over to the principal stockholder, to apply on indebtedness to her : *Held,* that the misapplication of the loan could not affect the creditors thus secured,. they being in no respect privy to such misapplication.

APPEAL from the Appellate Court for the First District ;— heard in that court on appeal from the Circuit Court of Cook. county ; the Hon. M. F. TULEY, Judge, presiding.

Mr. JAMES A. PETERSON, for the appellant:

The assets of an insolvent corporation are a trust fund for creditors, and it can not prefer its officers when they are creditors. When it ceases to do business it can not prefer creditors. *Railway Co.* v. *Ham,* 114 U. S. 587; *Melvin* v. *Insurance Co.* 80 Ill. 446; *Insurance Co.* v. *Manufacturing Co.* 97 id. 537; *Queenan* v. *Palmer,* 117 id. 619; *Mining Co.* v. *Edwards,* 103 id. 472; *Clapp* v. *Peterson,* 104 id. 27; *Mining Co.* v. *Mining Co.* 116 id. 170; *Beach* v. *Miller,* 130 id. 162.

Insolvency is but the condition of inability to meet one's obligations as the same become due, or in the usual course of business or trade. *Atwater* v. *Bank,* 40 Ill. App. 501; *Wolverton* v. *Taylor Co.* 30 id. 70.

When a debtor has formed a determination to voluntarily dispose of his whole estate, it is immaterial into how many parts the performance is broken. The law will regard all his acts having such object as one transaction. *White* v. *Cotzhausen,* 129 U. S. 329; *Preston* v. *Spaulding,* 120 Ill. 208.

An assignment is a transfer without compulsion, by a debtor to an assignee, in trust, to apply the same to the payment of his debts, and returning the surplus, if any, to the assignor. *Farwell* v. *Cohen,* 138 Ill. 216; *Farwell* v. *Nilsson,* 133 id. 45.

Where an insolvent debtor, quitting business, determines to yield dominion of his entire estate to a few creditors, and transfers substantially all his property to a few creditors by way of preferences, such acts will be declared to constitute a voluntary assignment, and such preferences will be set aside as against the statute. *White* v. *Cotzhausen,* 129 U. S. 329.

Messrs. TENNEY, CHURCH & COFFEEN, for the appellees:

It was competent for the corporation to prefer appellees as creditors and turn its property over to them in payment, if there is no fraud. *Reichwald* v. *Hotel Co.* 106 Ill. 439; *Warren* v. *Bank,* 149 id. 9.

Mr. Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought by John L. Peterson against the Brabrook Tailoring Company, its stockholders and officers, and certain of its creditors and others, praying, among other things, that certain judgments by confession against the company be vacated and set aside, and the liens of the executions issued thereon be cancelled, and that the company be wound up, a receiver appointed, and its assets collected and distributed *pro rata* among all its creditors. The suit was brought by the complainant as a stockholder and creditor of the company, and the bill was filed in his own behalf, and in behalf of all other creditors of the company who might choose to become parties and share in the costs and expenses of the litigation.

The Brabrook Tailoring Company was a corporation organized under the laws of this State February 5, 1887, with a capital stock of $50,000, divided into 500 shares of $100 each. Of this stock, on the organization of the company, Ida E. Brabrook, wife of William F. Brabrook, became the owner of 489 shares, William F. Brabrook Jr., a son, of five shares, Arthur G. Brabrook, another son, of five shares, and William F. Brabrook, the husband, of one share. Ida E. Brabrook was elected president, Arthur G. Brabrook vice president, and William F. Brabrook Jr. secretary and treasurer, and the three constituted the board of directors, and held their respective offices until December 13, 1890, the date of the company's failure.

The judgments by confession, which are the principal subjects of litigation, were all entered December 13, 1890, and consisted of one judgment in favor of William B. Roe for $8878.42, one in favor of Hinkleman, Jackson & Co., for $6440.08, and one in favor of Kinzie & Callinan for $2795.23. These were all entered on promissory notes and warrants of attorney executed that day, the notes being drawn payable

on demand, and the papers being executed by the secretary
of the company in pursuance of a resolution of the board of
directors adopted the same day authorizing their execution.
On these judgments writs of execution were immediately issued
and levied on the property of the company.

The original bill contained various charges against the
stockholders and officers of the company of fraud in connec-
tion with its organization and the disposition of its property,
and it also charged that the three notes, warrants of attorney
and judgments were each the result of a fraudulent conspir-
acy between these creditors and William F. Brabrook and
William F. Brabrook Jr., "to ruin and destroy the business of
the company, lay waste its property, and defraud its stock-
holders and creditors." It appears that on the same day on
which the notes and warrants of attorney were given, the com-
pany, as further security to these creditors for their debts,
assigned to them its outstanding book accounts, and the bill
charged that such assignment was the result of a similar
fraudulent conspiracy.

On filing the bill, an order was entered appointing a receiver,
but on appeal to the Appellate Court from such order, it was
held that the bill was not sufficient on its face to authorize
the appointment of a receiver, and the order was accordingly
reversed. *Brabrook Tailoring Co.* v. *Belden Bros. & Co.* 40
Ill. App. 326.

A demurrer to the bill being sustained, the bill was amended
so as to allege, among other things, that at the date of the
judgment notes and the entry of the judgments, the Brabrook
Tailoring Company was and for a long time prior thereto had
been insolvent, and that such fact was then and for a long
time prior thereto had been known to the judgment creditors;
that the property of the defendant corporation levied upon
was a trust fund for the benefit of all its creditors, and should
be distributed *pro rata* among them; that by the executions
the judgment creditors had obtained an undue and unlawful

preference over other creditors, and that their liens therefore should be set aside; and the amended bill prayed that the property of the Brabrook Tailoring Company be declared a trust fund, and distributed *pro rata* among all the creditors.

The bill was duly answered, and the cause being heard on pleadings and proofs, a decree was entered dismissing the bill for want of equity at the complainants' costs. On appeal to the Appellate Court the decree was affirmed, and the present appeal is from the judgment of affirmance.

The first contention by counsel for the appellant is, that the execution of the judgment notes was an illegal preference, and that the judgments entered thereon should be set aside at the instance of the other creditors, and the assets of the corporation distributed *pro rata* among all. This contention must rest either upon the theory that the execution of the judgment notes constituted in law a voluntary assignment under the statute, and that the preference thus given was void under section thirteen, or that it constituted a diversion and misappropriation of a trust fund which, by the insolvency of the corporation, had become vested in the corporate officers, as trustees for all the creditors.

As to whether these judgment notes constituted a voluntary assignment, it is sufficient to say that, as has been repeatedly decided by this court, a transfer of property, to be treated as a voluntary assignment under the statute, must be a conveyance to an assignee in trust for the creditors, and that a conveyance or transfer of property by an insolvent directly to his creditor for the purpose of securing or providing the means for the payment of that creditor only, is not a voluntary assignment. *Weber* v. *Mick*, 131 Ill. 530; *Farwell* v. *Nilsson*, 133 id. 45. In the first of these cases the preference was given by the insolvent debtor by executing a chattel mortgage upon his entire stock of goods directly to his creditors, and in the second case it was given, as here, by the execution to certain creditors of judgment notes under which levies were

made upon all his assets.   It follows that the giving of the judgment notes in this case, followed by an entry of judgments thereon and the levy of executions on all the tangible property of the insolvent corporation, did not of themselves constitute a voluntary assignment.

Nor are we able to see that the execution of the judgment notes and the subsequent entry of the judgments and levy of the executions were, in any proper sense, a diversion or misappropriation of a trust fund.   It is true that the estate of an insolvent corporation is said to be a trust fund for the use of the corporate creditors, but it is not the rule in this State that the mere fact of insolvency so far charges the directors and officers of the corporation with the character and functions of trustees as to take from them the power to make preferential transfers of the corporate assets, so long as they act in good faith, and do not attempt to prefer themselves.   *Ragland* v. *McFall,* 137 Ill. 81;  *Reichwald* v. *Commercial Hotel Co.* 106 id. 439;  *Warren* v. *First Nat. Bank,* 149 Ill. 9.

None of the creditors to which the judgment notes were given were stockholders, officers or agents of the corporation, and no want of good faith is shown with which they at least are in any degree chargeable.   The bill, it is true, charges fraudulent conspiracies between them and the officers of the company, but we fail to find such charges sustained by the proof.   Without attempting to review the evidence, it is sufficient to say that, instead of proving them, it conclusively establishes their falsity.

Nor is it shown, as counsel for the complainant insists, that the officers or agents of the corporation acted as the agents of these creditors and in that capacity obtained for them their preferences.   It appears that those of them who were non-residents of Chicago received telegrams from an officer or agent of the corporation summoning them to Chicago, and that, upon their arrival, negotiations were entered into between the officers of the corporation and these creditors, which re-

sulted in their advancing to the corporation the sum of $5000 in cash, the several creditors contributing to that sum in the *pro rata* proportion of their then existing claims against the corporation, and that the judgment notes in question were thereupon executed to them for the amounts then owing them respectively, including the contribution of each to the $5000 loan. At that time, as the evidence tends to show, the corporation was a going concern, and its officers expected and hoped that with the aid of the loan thus obtained, they would be able to surmount their existing financial embarrassments and continue in business. Upon the receipt of the judgment notes these creditors employed counsel of their own, and subsequently, on the same day, as appears, in consequence of some intimation received by counsel as to the probable action of other creditors, they advised the immediate entry of judgments and issue of executions, which was done. But the evidence fails to show that, beyond the execution and delivery of the judgment notes, the officers or agents of the corporation had any agency in the entry of the judgments or the levying of the executions.

Even if it be true, as is alleged, that the larger portion of the $5000 advanced by these creditors was afterwards in fact paid over to the principal stockholder of the corporation to apply on its indebtedness to her, such fact can in no degree affect the rights of these creditors. There is no evidence that such use of the money was contemplated by the creditors at the time they made the loan, or that they were in any respect privy to its subsequent misapplication.

The conclusion to which we have arrived renders it unnecessary for us to notice various other propositions urged by counsel in their briefs. We are of the opinion that, for the reasons above stated, the Circuit Court properly entered its decree dismissing the bill for want of equity, and the judgment of the Appellate Court affirming that decree will be affirmed.

*Judgment affirmed.*